## GARRISON *v.* GEREN.

### Opinion delivered May 14, 1923.

1. CONTRACT—CONCLUSIVENESS OF ARBITER'S DECISION.—Where the parties to an oil and gas lease contract made a certain firm of attorneys the arbiters to determine the validity of the lessor's title, their opinion can be questioned only for fraud or mistake.

2. SPECIFIC PERFORMANCE—RIGHT TO RELIEF.—The grantor in an oil and gas lease, as well as the grantee, may maintain a suit for specific performance.

3. ESCROW—PERFORMANCE OF CONDITIONS.—Where the conditions of an escrow agreement with reference to an oil and gas lease have

been met, it becomes the duty of the lessee to accept the lease and pay for it if the lease tendered is the one called for by the escrow agreement.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

*John D. Shackleford*, for appellant.

The burden was opinion appellee to prove the title was merchantable, and no attorney having been agreed on to pass on the title, he should have introduced the abstract as a part of his testimony. 142 Ark. 268. The agreement for terms and stipulations in a lease must be understood by both parties alike. 19 Ark. 23; 49 Ark. 306. A lease is a conveyance of a particular estate in lands. 228 S. W. (Ark.) 393; 2 Blackstone, Com. 367. Burden of proof of terms of lease on appellee, and testimony must be clear and satisfactory as to the precise terms. 228 S. W. 393; S. W. Ark. 854; 39 Ark. 424; 96 Ark. 98; 44 Ark. 334; 12 Ark. 421; 23 Ark. 704; 33 Ark. 294. The effect of this suit is to collect a forfeiture, and courts of equity abhor forfeitures. 30 Ark. 556.

SMITH, J. The parties to this litigation entered into the following written contract:

"Escrow Agreement.

"This agreement made and entered into this 14th day of January, 1921, by and between W. J. Goodwin, attorney in fact, for H. M. Geren and Julia Geren, his wife, party of the first part, and W. P. Garrison, of Little Rock, Arkansas, party of the second part, witnesseth:

"The party of the first part has executed an oil and gas lease to certain lands situated in section 22, township 17 south, range 15 west, in Union County, and the party of the second part attaches to said lease his draft in the amount of twelve thousand two hundred fifty ($12,250) dollars. In addition to the amount of $12,250, the party of the second part deposits herewith two thousand ($2,000) dollars cash, to be paid to the party of the first part when title to said land is passed by the attorney for the party of the second part. A copy of the

opinion of the attorney selected by the party of the second part, exhibited to the bank by the party of the first part, shall be authority for the payment of the said two thousand ($2,000) dollars.

"The party of the first part shall furnish and deliver abstract of title to land described in said oil and gas lease within two days from date hereof, showing good and merchantable title to said lease to be vested in party of the first part. Party of the second part shall have said abstract examined and said title to said lease passed upon by a competent attorney within five days from date of this instrument. If title is good and merchantable, then the bank hereinafter named shall pay said sum of two thousand ($2,000) dollars to party of the first part, and shall hold the said draft for twelve thousand two hundred fifty ($12,250) dollars, and the said oil and gas lease, for a period of fifteen days from date before final payment is made. The opinion of said attorney shall be in writing, and if he shall hold said title is defective, then all defects shall be clearly indicated and set forth by him in writing. If said title is defective, then party of the first part shall have five days from the date said attorney's opinion is delivered to him within which to cure said defects, and if he should fail to cure said defects, then said lease shall be delivered, at the expiration of the time limit of fifteen (15) days, to the party of the first part, and said sum of money shall be delivered and paid over by said bank to the party of the second part. It is distinctly understood that the party of the second part shall have a total of fifteen (15) days from date within which to make balance of payment of twelve thousand two hundred fifty ($12,250) dollars. It is agreed by and between the parties hereto that this instrument shall be deposited in escrow with the Citizens' National Bank of El Dorado, Arkansas.

"In witness whereof we have hereunto set our hands on this 14th day of January, 1921."

An abstract of the title to the land described was examined by Marsh & Marlin, a firm of attorneys practicing at El Dorado, and a written opinion was prepared by them on January 21, 1921, in which they advised that Geren had a good and indefeasible title, subject only to an outstanding lease—an objection which was immediately met by the reassignment of the lease.

After the approval of the title by Marsh & Marlin, the surrender of the $2,000 cash and the draft was demanded. This demand was refused, whereupon Geren brought suit for the specific performance of the lease, and made the bank a party.

Garrison answered, and filed a cross-complaint. He alleged that Marsh & Marlin were not the attorneys of his selection, and that he was therefore not bound by their opinion. He also alleged that the lease did not contain the recitals and agreements upon which he and Geren had agreed, and that the execution of the original escrow agreement had been procured by the false representation that no part of the land described was within the corporate limits of the city of El Dorado, whereas a material part of the land was situated within the corporate limits of that city, and therefore subject to certain municipal regulations in regard to drilling for oil and in piping oil from a producing well which did not obtain and were not in force outside of the city. By way of cross-complaint he alleged that he sustained a loss of $11,000, because some third parties refused to carry out a trade with him for the reason that the title shown by the abstract was not good and merchantable.

Geren brought this suit to enforce specific performance of the contract, and from a decree in his favor Garrison has appealed.

The principal question in the case is the one of fact whether Marsh & Marlin were the attorneys designated by Garrison to examine and pass upon the title. The court below expressly found the fact to be "that an abstract of title was duly furnished by plaintiff to the at-

torney selected by the defendant, and on January 21, 1921, the attorney so selected by said defendant approved the title, in a written opinion which was delivered to the defendant.''

We concur in this finding of fact, and as the parties, by their agreement, made Marsh & Marlin the arbiters to determine the validity of the title, the opinion so prepared can only be questioned for fraud or mistake. *LeRoy* v. *Harwood,* 119 Ark. 418; *Whitener-London Realty Co.* v. *Ritter,* 94 Ark. 263; *Hot Springs Ry. Co.* v. *Maher,* 48 Ark. 522; *Lewelling & Price-Williams* v, *St. Francis County Road Imp. Dist. No. 1,* 158 Ark. 91; *Williams* v. *Board of Directors,* 100 Ark. 166; *Drainage Dist.* v. *Kochtitzky,* 146 Ark. 494.

It appears that Garrison procured the written opinion of another firm of attorneys under date of April 5, 1921. This was, of course, long after the time limited by the escrow agreement, but this opinion did not disapprove the title. It called attention to the outstanding lease referred to in the opinion of Marsh & Marlin, and it also called attention to the fact that there was a missing link in the chain of title, but there may have been some showing in the abstract (which is not in the record) from which it appeared that the title was good and merchantable. notwithstanding this missing link. *Hinton* v. *Martin,* 151 Ark. 343; *Dalton* v. *Lybarger,* 152 Ark. 192.

There appears to be no substantial testimony to support the allegation that the execution of the agreement set out above had been procured through false representations as to the location of the land: and the court expressly found against Garrison on the allegation of loss of profits resulting from the defective title. We also concur in this finding.

Garrison testified that the lease called for in the escrow agreement never became a valid and binding contract because he never assented to it or signed it. If his signature was essential to the validity of the lease, he could easily have signed, as that opportunity

was afforded. A reading of the escrow agreement clearly indicates that the terms of the lease itself .had been agreed upon, and upon the approval of the title nothing remained to be done except to deliver the lease to Garrison and the money and the draft to Geren, as the lease .was attached to the draft. Garrison testified that the lease tendered was not such as he had agreed to accept, in this, that the lease he agreed to accept called for a rental of a dollar per acre per annum, and the rent for a gas well in use was $200; whereas the lease offered in evidence called for $285 for the ·57 acres of land embraced in the lease and $500 a year for gas rental.

On the other hand, the agent and attorney for Geren who acted for him in the matter testified that the terms and conditions of the lease were discussed in minute detail, and were fully agreed upon, and that he prepared the lease in Garrison's presence, and they discussed it in every detail as its preparation proceeded, and that as completed it was fully approved by Garrison, and nothing was left to be done except to execute and deliver it; and that the lease as thus prepared and agreed upon was delivered to Marsh & Marlin, along with the abstract.

The court below accepted this testimony; and so do we, for it accords with the recitals of the escrow agreement, and Garrison should have accepted the lease tendered.

The court decreed a specific performance of the contract, and we think the testimony warranted that action. The grantor, as well as the grantee, may maintain suit for specific performance. *Robinson* v. *Florence Sanitarium,* 149 Ark. 355; *Dollar* v. *Knight,* 145 Ark. 522; *Wilkins* v. *Eanes,* 126 Ark. 339.

The·. controlling question is whether .or not Geren complied with the escrow agreement by furnishing a good and merchantable title which was approved by his attorney, .and tendered a written lease the provisions of

which conformed to the agreement of the parties. The court below decided these questions in favor of Geren, and so do we, and, having done so, the remaining question is whether the lease contract will be specifically enforced.

The conditions of the escrow agreement having been met, it became the duty of Garrison to accept the lease which had been placed in escrow and pay for it, if the lease tendered was the one called for by the escrow agreement. *Master* v. *Clark*, 89 Ark. 191; 21 C. J. § 34, chap. Escrows; *Roach* v. *Malone Mercantile Co.,* 135 Ark. 69.

. The lease itself then became the contract between the parties, and we must look to it to ascertain the relative rights and obligations of the parties. There is nothing indefinite or uncertain about this lease, and we perceive no reason why the court should withhold the relief of specific performance, and the decree to that effect is affirmed.