HENDRY, Chief Judge.
This is an appeal by Atlantic Coast Line Railroad Company, defendant below, from a judgment for the plaintiff, Roy C. Plil-born. The judgment was based upon a jury verdict of $200,000.00 returned in plaintiff’s favor in an action against the defendant brought by the plaintiff under and pursuant to the Federal Employers’ Liability Act, 45 U.S.C.A. § 51 et seq.
Plaintiff’s complaint alleges that on November 6, 1963, while he was engaged in working on defendant’s railroad at or near the St. Petersburg yards, a train then being operated or controlled by the defendant ran over him. It is further alleged that the defendant negligently maintained, operated or controlled its equipment, track and road bed, or that said equipment, et cetera was negligently defective or insufficient; or that defendant failed to make reasonable inspection of its equipment, track or road bed; that a car was operated with defective or insecure equipment, or that a locomotive was not in proper condition and safe to operate; that defendant operated a train without air or power brakes, or proper brakes operated by or under the control of the engineer of said train, in violation of 45 U.S.C.A. § 9. It was also alleged that the negligence of defendant’s officers and agents or employees proximately caused plaintiff severe and permanent injury.
The plaintiff was injured while he was engaged in the performance of his duties as *597 defendant’s switch foreman or yard conductor. He and four other members of the •crew were switching cars and making up a train in defendant’s St. Petersburg yard on the night of November 6, 1963, when the .accident occurred. There was a stationary cut of twenty-three cars at the north end -of track number 5; a locomotive and twenty cars were to be coupled with the twenty-three car cut. The engineer and his assistant engineer were in the locomotive. The switchman was on the ground near •the twenty-three cars at the north end of •the track. Plaintiff and the trainmen were on the ground between the switchman and •the locomotive. On the ti-ainman’s signal, •the engineer moved his locomotive and the twenty cars northward. The switchman relayed to plaintiff the slow-down signal as the coupling with the twenty-three cars approached and the stop signal when the coupling was made. Plaintiff relayed the signals to the trainman who relayed them to the engineer. When the coupling was made .and the train stopped, plaintiff, the trainman and the switchman went between two •cars to cross the angle cocks and align the • car hoses. All three entered from the west ■side of the train at about the same time. The train then moved and all three men jumped back. Plaintiff was permanently injured when his heel got caught by the southwest wheel of the car, which knocked "him down. He rolled and the wheels went "by him after which he crawled out from un•der the car. There was evidence that there was blood on the plaintiff, on the ground ■where he lay and on the S.L.S.F. hopper’s ■southwest wheel about twenty feet south of plaintiff after the accident. Plaintiff’s evidence tends to show that the three crew ■members on the ground each deemed the train totally stopped after the coupling and before they went between the various cars •to perform their duties. The cause of the train’s movements is in dispute. It is plaintiff’s contention that the engineer negligently moved his engine forward while plaintiff and the other members of the ground crew were between the cars. It is defendant’s contention that it was guilty of no negligence and that the usual slack action coming from the end of the train following the coupling was the cause of the movement.
The jury heard the evidence during the four and one half days of trial and resolved the conflicts in favor of the plaintiff by its verdict in the amount of $200,000.00. From our review of the record, we have concluded that the evidence is sufficient to support the verdict of the jury.[1]
Prior to trial, the deposition of A. J. Douberly of St. Petersburg, defendant’s general yard master, was taken by plaintiff. Plaintiff and defendant had Douberly under subpoena to testify at trial but plaintiff did not call him as a witness. Defendant called Douberly who testified that he was not present at the yard at the time of the accident, but that he was present when five or six post-accident tests were run. He testified that the train was backed up and stopped, and the slack action was measured at three to six feet. On cross examination plaintiff elicited the fact that the tests were run with all forty-three cars coupled together. The trial court then asked plaintiff if he had any further questions and received a negative response. The defendant responded that he had no redirect examination. The court then asked, “Are you through with the witness?”, to which plaintiff’s counsel replied, “As far as we are concerned.” The court then released Douberly from any subpoena which he might have.
Subsequently, the defendant examined a police officer who had investigated the accident. He testified that he found blood at the “1 o’clock position” on the S.L.S.F. hopper’s southwest wheel which was “clear” and did not “have any debris in *598 it” but that he "could find no blood on the rails.” Defendant called another witness who testified that when the wheel is turned to the “1 o’clock position” it has moved about five and one-half feet. Plaintiff, over defendant’s objection, then read from the deposition of Douberly. According- to Douberly’s testimony, he saw a blood mark “about as big as your hand” on the hopper’s southwest wheel and “blood on the rail * * * about the same size, on the west rail”.
The defendant contends that it was error to permit the plaintiff to read from the deposition of Douberly.
Rule 1.21(d) (3), Florida Rules of Civil Procedure, 30 F.S.A.[2], permits the use of depositions where the witness is unavailable or where exceptional circumstances exist. A situation similar to the one before us was presented to the Ninth Circuit Court of Appeals in G. E. J. Corporation v. Uranium Aire, Inc., 311 F.2d 749 (9th Cir. 1962), under Rule 26(d) of the Federal Rules of Civil Procedure. In that case, the court indicated that the party should have arranged for the witness’ testimony while he was available, and that the argument that the party had no idea that the testimony would be needed was not valid as the subject of the testimony related to a major issue in that case upon which the party bore the burden of proof. The court, therefore, saw no error in the trial court’s rejection of the deposition. The Ninth Circuit cited the case of Klepal v. Pennsylvania Railroad Company, 229 F.2d 610 (2d Cir. 1956) in which seven depositions were introduced although four of the witnesses were available, three of which later appeared at the trial. The testimony of the witness who was available but did not appear was determined not to be of controlling importance. In Klepal, the Second Circuit stated that the judge’s careful analysis of the evidence in his opinion showed an appropriate reliance upon the oral testimony and concluded that there was no good reason why all this ground should be. retraversed to reach eventually a like result. See Holt v. Werbe, 198 F.2d 910 (8th Cir. 1952).
In the case before us, the testimony was-merely cumulative of other evidence-demonstrating that the engine moved the-train south about twenty feet. It was the-testimony of the general yard master of the • defendant who was previously called as a. witness by the defendant and excused presumably to return to St. Petersburg where • he lived and worked.
Considering the testimony and the circumstances we do not think that the action of the trial court requires a reversal of the judgment.
The defendant’s remaining points on appeal fail to clearly show reversible error.. See Florida Power & Light Co. v. Robinson, Fla. 1953, 68 So.2d 406; Ratner v. Arrington, Fla.App.1959, 111 So.2d 82.
Accordingly, the judgment appealed is-, affirmed.
Affirmed.

. Booker v. Lima, Fla.App.1966, 182 So.2d 642; Bowser v. Harder, Fla.App.1957, 98 So.2d 752.

. “(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
1. That the witness is dead; 2. that the ■witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or 3. that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment ; or 4. that the party offering the deposition has been unable to procure the attendance of the witness; or 5. upon application and notice, that such exceptional circumstances exist as to make it desirable in the interest of justice and with due regard to the importance .of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.”